FILED
2021 Sep-13 PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **AMERICAN FAMILY CARE, INC.,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**MEDHELP, P.C.,** )<br>)<br>Defendant. )<br>)<br>)<br>) | Case No. 2:19-CV-01325-LSC |

## MEMORANDUM OF OPINION

Plaintiff American Family Care, Inc., ("AFC") sues MedHelp, PC, ("MedHelp"), alleging a Lanham Act false advertising claim under 15 U.S.C. § 1125(a). MedHelp has moved for summary judgment (doc. 23) and seeks to strike an evidentiary submission from the Court's consideration (doc. 24).

For reasons explained within, the Court grants MedHelp's Motion for Summary Judgment (doc. 23) and MedHelp's Motion to Exclude the Testimony of Jake McKenzie (doc. 24) is denied as moot.

## STATEMENT OF THE UNDISPUTED FACTS

AFC is a nationwide healthcare provider that supplies urgent care, family/primary care, and occupational health services.[1] On June 14, 1982, Dr. Bruce Irwin opened the first AFC clinic as Emergency Medicine South ("EMS") in Hoover, Alabama before legally changing the name to American Family Care in 1984. No other urgent care clinics were operating in Birmingham at the time of its opening. On September 17, 1982, MedHelp opened its first clinic in Homewood, Alabama. As of March 3, 2021, AFC operates 240 clinics and is the largest urgent care chain in the United States; meanwhile, MedHelp operates five locations in Jefferson and Shelby County.

For several years, MedHelp advertised on its website that, "MedHelp was founded in 1982 as the first Urgent Care/Family Practice in Birmingham." In 2016, AFC discovered the alleged false claim. In early 2018, AFC claimed to be the first Birmingham urgent care clinic on its website. Before filing suit, AFC's counsel sent two letters asking MedHelp to voluntarily remove its online claim and MedHelp

---

[1] The Court gleans these "facts" from the parties' submissions of "undisputed facts" and the Court's examination of the record. These are "facts" for summary judgment purposes only. Their inclusion in this Memorandum of Opinion does not signal their veracity. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

refused. Currently, MedHelp's website no longer contains the claim to be the "first Urgent Care/Family Practice in Birmingham," and it asserts it has no plans to reinstate this language.

AFC claims there is a correlation between being one of the first urgent care facilities and being a successful urgent care clinic chain. AFC's founder commented that while "[t]here is no consistent definition of urgent care," there are common themes among urgent care clinics. (Doc. 23-1; Ex. 3, at 89: 7-8) Notably, the phrase "urgent care" was not in use at the time of AFC's opening. Then, urgent care clinics were typically called "freestanding emergency rooms," "minor emergency rooms," "immediate care clinics," or "walk-in clinics." The phrase "urgent care" did not become popular until years later. Today, such clinics are generally called urgent care clinics.

## STANDARDS OF REVIEW

A successful summary judgment movant shows there is no genuine dispute of material fact and that judgment is due to be granted as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists, and summary judgment is not appropriate if "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*,

*Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2007)). At summary judgment, district courts view all evidence and draw all justifiable inferences in the nonmoving party's favor. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). Then we determine "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51 (1986).

Viewing the evidence and drawing all justifiable inferences in AFC's favor, the false advertising claim does not involve disputed questions of fact and fails to fall within the "province of the jury." *Cf. Hammer v. Slater*, 20 F.3d 1137, 1143 (11th Cir. 1994). Summary judgment is therefore due to be granted.

## ANALYSIS

After careful review, the Court concludes that Defendant's Motion for Summary Judgment is due to be granted. As a result, Defendant's Motion to Exclude the testimony of Mr. Jake McKenzie is denied as moot.

**I.  False Advertising Claim**

AFC brings a Lanham Act false advertising claim against MedHelp under 15 U.S.C. § 1125(a). (Doc. 1.) The relevant portion of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false

or misleading description of fact, or false or misleading representation of fact, which—

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a)(1)(B).

Under the statute, entities cannot misrepresent the "nature, characteristics, qualities, or geographic origin" of their services in commercial advertisements and promotions. *Id*. For a commercial advertisement or promotion to fall under the Latham Act, it must be: "(1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendant's goods or services[;] and (4) the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry." *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017).

To establish a claim for false advertising under the Lanham Act, a plaintiff must show: "(1) the ads of the opposing party were false or misleading; (2) the ads deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects

interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (quoting *North American Medical Corp v. Axiom Worldwide*, 522 F.3d 1211, 1224 (11th Cir. 2008)).

### A. Classification of the Advertisement

AFC bases its false advertising claim on the statement from MedHelp's website that "MedHelp was founded in 1982 as the first Urgent Care/Family Practice in Birmingham." (Doc. 1.) This statement satisfies the first element of a false advertising claim under § 43(a) if it is either "literally false as a factual matter" or "literally true or ambiguous but . . . conveys a false impression." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1261 (11th Cir. 2004). Whether a statement is literally false or simply misleading is often a "matter of degree." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008).

Courts must analyze the advertisement in its full context, rather than "examining the eyes, nose, and mouth separately and in isolation from each other." *1-800 Contacts*, 299 F.3d 1242, 1248 (11th Cir. 2002) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3rd Cir. 1993)). If the meaning is unclear, ambiguous, or otherwise open to more than one reasonable interpretation, the advertisement

cannot be literally false and is more likely to only be misleading. *See Osmose*, 612 F.3d at 1309. If literally false, the movant is not required to prove consumer deception. *Id.* at 1319. Conversely, if the advertisement is only misleading, evidence of deception is required. *Id.*

AFC has not demonstrated that MedHelp's claim is literally false. In the context of the healthcare industry, Dr. Irwin states that the term "urgent care" only became prevalent in the years following the opening of his first clinic. (Doc. 23-1, Ex. 3 at 29: 16-23, 30: 1-6) Further, Irwin indicates that while there are common themes in the services urgent care clinics offer, there is no consistent definition of the term. (Doc. 23-1, Ex. 3 at 90: 5-7.) Yet, AFC does not provide evidence discussing "common themes" of urgent care clinics that could aid the Court's analysis. As a result, the phrase "urgent care" is unclear or ambiguous, so the claim to be the "first Urgent Care/Family Practice" is likewise ambiguous.

Further, it is unclear whether "Birmingham" in MedHelp's advertisement refers to the metro Birmingham area or Birmingham proper. While AFC interprets "Birmingham" as entailing the metro Birmingham area, a person could also reasonably interpret it to mean Birmingham without the surrounding suburbs. Because the phrase "first Urgent Care/Family Practice in Birmingham" is open to more than one interpretation, the Court finds it misleading rather than literally false.

### B. Consumer Deception

Considering the advertisement is merely misleading, AFC must present evidence of consumer deception. Although consumer surveys and market research are not required, the movant must at least provide "expert testimony or similar evidence" to prove this element. *Johnson & Johnson*, 299 F.3d at 1247. Yet, AFC's expert witness did not offer an opinion on consumer deception. McKenzie only noted the importance of being first in a market and the value to AFC of being first. (Doc. 23-1.) Considering AFC did not present any evidence of consumer deception, this element fails.

### C. Materiality

AFC contends that being the first urgent care in the Birmingham market is material to patients because the claim conveys "broader qualities including, but not limited to, 'experience,' 'trust,' and 'competence' that are important in choosing a health care provider." (Doc. 26 at 7.) The Court disagrees. AFC has not presented probative evidence showing that MedHelp's claim of being the first urgent care clinic in Birmingham influenced any consumers to choose MedHelp over AFC. Even if an advertisement is literally false, the plaintiff must still establish materiality. *See Osmose,* 612 F.3d 1298 at 1308.

To be material, the defendant's deception must be "likely to influence the purchasing decision." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F. 3d 1242, 1250 (11th Cir. 2002); *See also Stiefel Labs v. Brookstone Pharms.*, 535 F.3d Fed. Appx. 774 (11th Cir. 2013) (finding that the plaintiff demonstrated loss of market share but not that the false statements influenced any purchasing decisions). A plaintiff can demonstrate materiality by showing the defendant "misrepresented an inherent quality or characteristic" of the product or service. *See Osmose,* 612 F.3d at 1319 (holding that advertisements attacking a product's safety and efficacy are material). Significantly, not all false statements are material. *See J-B Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 796 (11th Cir. 2020) (holding that the plaintiff failed to present evidence that chemical differences between competing epoxies mattered to consumers). If the false or misleading statement is irrelevant to consumer purchasing decisions, then it "cannot be the basis for a false advertising claim." *Id.* at 797.

To establish materiality, AFC must show that being the first urgent care clinic in Birmingham is an inherent quality or characteristic likely to influence a patient choosing an urgent care clinic. AFC failed to do so. In his report, Mr. McKenzie opines that the claim to be first in the urgent care industry speaks directly to "history and longevity" (Doc. 23-1, Ex. 5 at 54.) Yet, McKenzie lacks support for this

assumption considering he does not cite any articles that discuss the longevity of either hospitals or urgent care clinics. (Doc. 23-1, Ex. 5 at 57: 21-23, 58: 6-10.)

Mr. McKenzie then asserts that the longevity of an urgent care clinic communicates "resilience," which McKenzie regards as a proxy to the qualities of "experience," "trust," and "competence." (*Id.*) AFC and Mr. McKenzie assert that these qualities matter to consumers when choosing an urgent care clinic. (*Id.*) To establish "experience" as an inherent quality of urgent care clinics, McKenzie cites two studies: a conjoint analysis of patient decisions in two German hospitals and research involving health-seeking preferences of elderly Filipinos. (Doc. 23-1, Ex. 5 at 104-154.) Yet, McKenzie fails to link German consumer decisions when selecting German hospitals to American consumers choosing American urgent care clinics. Nor does McKenzie discuss the applicability of the health-seeking preferences of elderly Filipinos on the United States urgent care market. Further, AFC's expert provides no evidence that "trust" and "competence" of urgent care clinics hold any weight in the minds of consumers. Although McKenzie provides calculations showing AFC's market share is lower than the forecast for "first movers," AFC fails to establish that MedHelp's claim to be first urgent care caused AFC's lower market share. As a result, AFC does not show materiality.

**D. Injury**

The final element of a Lanham Act false advertising claim is that the false advertising "caused injury to the plaintiff." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268 at *10 (N.D. Ala. 2016) (quoting *Air Turbine Tech., Inc. v. Atlas Copco AB*, 295 F. Supp. 2d 1334, 1344 (S.D. Fla. 2003)). The movant can show "causation" by providing evidence that links the false advertisement to consumers' decisions not to purchase the movant's product. *Id.* If relying on an expert witness for causation, the expert need not exclude every possible alternative cause of a plaintiff's injury; however, to provide reliable testimony, an expert must consider the most relevant factors as to causation. *Id.* at *8. *See also 3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958 (D. Minn. 2005) (finding insufficient causation evidence because the plaintiff's expert's calculations relied solely on the assumption that false advertising caused the plaintiff's lost profits).

Here, AFC relies solely on McKenzie's report for its damages calculation. In turn, McKenzie relies on the article *Market Entry Strategies: Pioneers Versus Late Arrivals* for the claim that AFC, as an alleged first mover in the U.S. market, should have a 24-30% market share advantage over MedHelp. (Doc. 23-1, Ex. 5 at 54-57.) McKenzie asserts that this difference in market share is solely attributable to MedHelp's misleading claim. In his report, McKenzie relies entirely on the

assumption that AFC is the first mover in the U.S. market for urgent care clinics. (Doc. 23-1, Ex. 5 at 92: 16-18.) Yet, McKenzie concedes that if AFC is not the first urgent care clinic in the United States, it would not have the first-mover advantage. (Doc. 23-1, Ex. 5 at 93: 12-19.) Neither AFC nor McKenzie provides any evidence that AFC was the first to establish itself in the U.S. urgent care market. (Doc. 23-1, Ex. 5 at 102: 21-23, 103: 1-3.) Further, Irwin testified that there were "less than a hundred" urgent care clinics when he opened his clinic in Hoover. (Doc. 23-1, Ex. 3 at 23: 15-18.) Considering AFC was not the first urgent care clinic in the United States, it cannot claim a first-mover advantage.

Further, Plaintiff lacks evidence that demonstrates MedHelp's misleading claim caused AFC to lack a 24-30% U.S. market share advantage over MedHelp. AFC fails to provide any evidence that MedHelp's first-mover claim caused AFC to lose any profits, goodwill, or business opportunities. Further, McKenzie admits that to appropriately value a claim, he would need to know how many people saw the claim. (Doc. 23-1, Ex. 5 at 69: 13-19.) However, he lacks information on the number of people who saw MedHelp's claim to be first, or even how many people visited MedHelp's webpage where the claim was posted. (*Id*. at 26: 20-23, 69: 20-23, 70:1.) In addition, McKenzie cannot point to any patients lost because of MedHelp's claim to be first and failed to conduct any surveys or studies that could confirm this

assumption. As such, there is no evidence connecting MedHelp's misrepresentation to a drop in AFC's profits or sales.

Finally, Mr. McKenzie's report failed to account for additional factors that could have influenced AFC's market share. *Market Entry Strategies: Pioneers Versus Late Arrivals,* discusses numerous other factors that also explain why market pioneers lose market share advantages, such as not offering superior customer service or innovative technology that allows new entrants to offer competitive services at a lower cost. (Doc. 23-1, Ex. 5 at 78: 2-23, 79: 1-17.) McKenzie did not discuss or rule either of these factors out. Further, although McKenzie recognized that negative publicity can hurt a first mover's expected advantage, he failed to analyze the effect of negative publicity on a first mover's expected advantage. (Doc. 23-1, Ex. 5 at 83: 11-13; 84: 1-2; 11-16.) Dr. Vaughn testified that he read in the news that AFC was sued for insurance fraud and "had to pay a big fine," and that he "[did not] want people to confuse [Medhelp] with American Family Care." (Doc. 23-1, Ex. 5 at 54: 7-23, 55: 1-3.) Yet, McKenzie did not eliminate the possibility that potential reputational harm might have affected the expected first-mover advantage. As such, Mr. McKenzie's damages calculation is insufficient to establish the element of causation for AFC's claim under the Lanham Act.

As a result, the evidence that Plaintiff and its expert have presented is not sufficient for a trier of fact to find causation under the Lanham Act.[2] As addressed above, Mr. McKenzie has not provided reliable testimony, so his damages calculation is due to be stricken. But even the Court was to consider his testimony, there would still be no genuine issue of material fact regarding causation.

## CONCLUSION

MedHelp's Motion for Summary Judgment (doc. 23) is granted. MedHelp's Motion to Exclude the Testimony of Jake McKenzie (doc. 24) is terminated as moot. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on September 13, 2021.

_____
L. Scott Coogler
United States District Judge
206888

---

[2] The Court finds it significant that in its Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff did not properly address the element of causation. Instead, Plaintiff cites the Trademark Modernization Act of 2020, which allows injury to be presumed for purposes of awarding equitable relief. Notably, a movant can invoke this recent revision to the Lanham Act in two instances: (1) in the case of a motion for a permanent injunction after a finding of a Lanham Act violation or (2) in the case of a motion for preliminary injunction or temporary restraining order after finding a likelihood of success on the merits of a Lanham Act violation.

The present case does not fit into either category, and Plaintiff has presented no further evidence suggesting that the Court should presume that Defendant's alleged false statements caused Plaintiff's injury.